# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**HOROB LIVESTOCK INC**,<br><br>Debtor. | Case No. **06-60149-7** |
| **JOSEPH V. WOMACK**,<br><br>Plaintiff.<br><br>-vs-<br><br>**HOROB LIVESTOCK INC**, **JAMES L. HOROB**, **BEA M. HOROB**, **LARRY G. HOROB**, **TODD KENNETH HOROB**, **TERESA HOROB**, **WELLS FARGO BANK, NATIONAL ASSOCIATION**, **DARYLE SYME**, **MARY ZIEGLER**, and **JAMES ZIEGLER**,<br><br>Defendants. | Adv No. **07-00001** |

## *MEMORANDUM of DECISION*

At Butte in said District this 4th day of October, 2007.

In this Adversary Proceeding, after due notice, a hearing was held September 18, 2007, in Billings on whether the Defendants James and Bea Horob are entitled to a jury trial given the Trustee's Notice of Withdrawal of Consent to Jury Trial and Request for Judge Trial filed

1

September 14, 2007, at docket entry no., 193 and Wells Fargo's Notice of Withdrawal of Consent to Jury Trial, [and] Request for Judge Trial filed September 14, 2007, at docket entry no. 199; together with the reply and amended reply thereto filed by James and Bea Horob on September 17, 2007, at docket entry nos. 223 and 224.  The Plaintiff/Trustee, Joseph V. Womack of Billings, Montana, appeared at the hearing in support of his Motion.  Wells Fargo Bank, N.A., was represented at the hearing by attorneys William D. Lamdin and Kevin P. Heaney, both of Billings, Montana; and James and Bea Horob were represented at the hearing by their attorney, Kevin J. Chapman of Williston, North Dakota.  The Court heard no testimony with respect to the matter addressed in this Memorandum of Decision and no exhibits were offered into evidence.

Before the Court embarks on setting forth the applicable law with respect to the request for jury trial by James and Bea Horob, the Court feels compelled to provide a little factual background as to how this Proceeding came to be filed.  James and Todd Horob are brothers and each owns a 50% interest in the Debtor, Horob Livestock, Inc. ("Horob Livestock").  Todd Horob ("Todd") is the President and Chief Operating Officer of Horob Livestock.  Horob Livestock is a North Dakota corporation authorized to do business in North Dakota and Montana.  On March 24, 2006, Todd caused two voluntary Chapter 7 bankruptcy petitions to be filed; one on behalf of himself and one on behalf of Horob Livestock.  James did not file Horob Livestock's bankruptcy petition nor did he sign the Statement Regarding Authority to Sign and File Petition, and the evidence in Horob Livestock's case was not clear as to whether James had knowledge prior to March 24, 2006, regarding Todd's desire to file a bankruptcy petition on behalf of the Horob Livestock.  However, James conceded that he knew that Todd had filed a

bankruptcy petition on behalf of Horob Livestock either on March 24, 2006, or March 25, 2006. Nevertheless, James claimed that because neither a formal corporate resolution existed nor a meeting occurred authorizing the bankruptcy filing and because he was not aware of and did not sign the "Statement Regarding Authority to Sign and File Petition," that Horob Livestock's bankruptcy should be dismissed.

This Court entered a Memorandum of Decision and Order in Horob Livestock's main bankruptcy case on September 21, 2007, denying James' request for dismissal. The Court concluded that although James had not taken an active role in Horob Livestock's bankruptcy proceeding, he had nonetheless been involved. For instance, Wells Fargo filed a motion for a Rule 2004 examination on June 13, 2006, seeking to examine James. Wells Fargo's motion was granted by Order entered June 14, 2006, and Exhibit A attached to the Trustee's objection to the Motion to Dismiss reflects that James was indeed examined on July 19, 2006. James was represented at the July 19, 2006, Rule 2004 examination by attorney Peter H. Furuseth. James had also indirectly purchased assets from the Horob Livestock bankruptcy estate. Based in part on the above facts, this Court wrote:

> James had knowledge of Horob Livestock's bankruptcy filing since its inception and yet waited seventeen months to seek the dismissal of this bankruptcy. Curiously, James and Bea Horob seemed content to accept the protections afforded by Horob Livestock's bankruptcy until such time that it became necessary to file their motion in an effort to frustrate the Trustee's adversary proceeding. As mentioned earlier, the Trustee's complaint includes claims that are unique to a bankruptcy proceeding. A case relied upon by James and Bea Horob in their motion states that it could "conceive of circumstances where dismissal of a bankruptcy proceeding, for non-compliance with corporate by laws or state law upon the motion of a stockholder who holds what otherwise might be a preferential transfer, would be unjustified in both law and equity." *In re Stavola/Manson Elec. Co., Inc.*, 94 B.R. 21, 25 (Bankr. D.Conn. 1988).

> The above, combined with James knowledge of, and indeed participation behind the scenes in this bankruptcy proceeding for the past eighteen months convinces this Court that James acquiesced and consented to Horob Livestock's bankruptcy, and thus ratified such. Therefore, the motion to dismiss must fail.

The above-mentioned Memorandum of Decision has not been appealed and is thus final.

The Trustee filed complaints commencing this Adversary Proceeding and Adversary Proceeding 06-150. This Adversary Proceeding and Adversary Proceeding 06-150 were subsequently consolidated on June 27, 2007. Following consolidation of this Adversary Proceeding and Adversary Proceeding 06-150, the Trustee filed a "Consolidated Amended Complaint to Avoid Fraudulent Transfers, to Recover Avoidable Transfers, for Turnover of Property of the Estate, to Recover Estate Property or Its Value and to Sell Property Free and Clear of Liens and Interests" ("Amended Complaint") on August 1, 2007. The Trustee's Amended Complaint lists the following parties as Defendants: (1) James and Bea Horob; (2) Larry G. Horob; (3) Todd and Teresa Horob; (4) Lyle Hove; (5) Daryle Syme; (6) James and Mary Ziegler, d/b/a Lake Region Livestock; (7) Hank's Wheat Ranch, a Montana corporation; (8) Jeanne Hoglund; (9) Martha Heller; (10) Farm Credit Services of North Dakota, ACA, and its subsidiaries, Farm Credit Services of North Dakota, FLCA, and Farm Credit Services of North Dakota, PCA; and (11) Wells Fargo Bank, National Association.

Through various stipulations that have been filed and approved, all claims against Lyle Hove, Daryle Syme, James and Mary Ziegler, d/b/a Lake Regon Livestock, Hank's Wheat Ranch, Jeanne Hoglund and Martha Heller have been resolved. Farm Credit Services, ACA, FLCA and PCA are still Defendants in this action, but only because they hold the mortgage on a portion of certain property that is the subject of the Trustee's claim against James Horob.

Likewise, the Trustee has either dismissed or resolved all claims for punitive and money damages and Wells Fargo has voluntarily dismissed all claims for punitive damages along with its civil conspiracy claims. Thus, Wells Fargo is now pursuing only its fraudulent conveyance claims (both for actual and constructive fraud) against Larry Horob, James Horob and Bea Horob (to the extent she had any interest in the real property at issue). The Trustee's claims are similarly limited to his claims to avoid pre-petition transfers under 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B) and 551; his claim to avoid fraudulent transfers; his preference action under 11 U.S.C. §§ 547 and 551; his postpetition transfer action under 11 U.S.C. §§ 549(a) and 551; and the Trustee's request for turnover of property, partition of property and sale of real property. On all of the above claims, the Trustee seeks "such other and further relief as this Court deems just and appropriate."

The Trustee and Wells Fargo agree that at one time, their claims included relief that was legal in nature, *i.e.,* the Trustee and Wells Fargo were seeking the turnover of money and an award of punitive and money damages. However, the Trustee's and Wells Fargo's claims are now limited in that they simply seek to unravel alleged postpetition, preferential, fraudulent or otherwise inappropriate transfers of real property and to return the parties to the position they would have been in had such transfers of property not occurred.

James and Bea Horob oppose the tactical decisions made by the Trustee and Wells Fargo and assert that they have a right to a Seventh Amendment jury trial. In support of their request for a jury trial, James and Bea Horob rely heavily on *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

A party's right to a jury trial is grounded in the Seventh Amendment to the United States

Constitution, which provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of a trial by jury shall be preserved...." U.S. CONST. amend. VII.  The Seventh Amendment only preserves the right to a jury trial for suits at common law, not suits based in equity.  To ascertain whether a party has a Seventh Amendment right to a jury trial, the Supreme Court, in *Granfinanciera,* articulated a three-part test for determining whether claims are legal or equitable: "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature."  492 U.S. at 42, 109 S.Ct. 2782 (quoting *Tull v. United States,* 481 U.S. 412, 417-418, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)).  However, the Supreme Court reiterated that "characterizing the relief sought is '[m]ore important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial."  *Tull*, 481 U.S. at 421, quoting *Curtis v. Loether*, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974).  Finally, "if, on balance, [the] above two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, [a court] must [then] decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder."  *Granfinanciera,* 492 U.S. at 42.

Before reaching the issue of the actual trial in this matter, the Court notes that in a recent decision, the Ninth Circuit Court of Appeals ruled that "a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court.  Instead, the bankruptcy court is permitted to retain jurisdiction over the action for pre-trial matters."  *Sigma Micro Corp. v. Healthcentral.com (In re*

6

*Healthcentral.com)*, — F.3d —, 2007 WL 2743497, *8 (9th Cir. Sept. 21, 2007). Although the parties have not challenged this Court's jurisdiction, the Court provides the above excerpt merely to clarify that this Court has jurisdiction to determine all pretrial matters in this Adversary Proceeding, irrespective of any of the parties' right to a jury trial.

As for a Seventh Amendment right to a jury trial, another Ninth Circuit Court of Appeals case is enlightening: *Johnson v. Gardner*, 179 F.2d 114 (9th Cir. 1950). In *Johnson*, the bankrupt made various prepetition transfers of real property to her daughter and three minor grandchildren. The trustee in the *Johnson* case initiated a fraudulent conveyance action against the bankrupt, her daughter and the grandchildren asserting that the prepetition transfers "were without a fair consideration and were intended to hinder, delay and defraud creditors, both present and future, as of the respective times of such conveyances." *Johnson*, 179 F.2d at 115. The trustee thus requested, in part, "that the recorded deeds purporting to convey the real property in suit be ordered cancelled of record, and the record title of such real property be vested in the trustee in bankruptcy for the estate of [the bankrupt]." *Id.* At the time of trial, the bankrupt requested a jury trial. The bankruptcy court concluded that the bankrupt had waived her right to a jury trial and proceeded with a bench trial. On appeal, the Ninth Circuit affirmed the bankruptcy court's denial of a jury trial, stating:

> It is pellucidly clear from a consideration of the pleadings, findings, conclusions and the judgment in the record before us that the action in the District Court was entirely and essentially one of equitable cognizance. *Brainard v. Cohn*, 9 Cir., 1923, 8 F.2d 13. There was no demand for monetary relief except such as might be awarded against the bankrupt as a corollary to an accounting which is in an historic field of equity jurisprudence. *Kemp-Booth Co. v. Calvin*, 9 Cir., 1936, 84 F.2d 377.
>
> The gravamen of the suit and the crucial issue in it is the fraud that is

>alleged in the amended complaint to be the actuating means of the conveyances of the real property which the trustee seeks to recover for the bankrupt estate. Thus the wrong wrought by the fraud is not remediable at law in any efficient and practical way, and the historical equitable relief by cancellation of record is the only adequate and complete remedy.
>
>Under such a situation, while it is true that the fraud alleged in the amended complaint is a question of fact in the suit, it is not one which under the record the chancellor was required to call the jury to decide. *Hummel v. Wells Petroleum Co.*, 7 Cir., 1940, 111 F.2d 883; Cf. *Johnsen v. American-Hawaiian S.S. Co.*, 9 Cir., 1938, 98 F.2d 847, 852.

*Johnson*, 179 F.2d at 117.

After carefully reading *Granfinanciera*, 492 U.S. 33, this Court concludes that *Johnson* is still good law and that *Granfinanciera* is distinguishable. In *Granfinanciera,* the bankruptcy trustee sued to recover an alleged fraudulent transfer of $1.7 million from the defendant, who demanded a jury trial. *Granfinanciera,* 492 U.S. at 36-37. The trustee sought to avoid the transfer and recover damages, costs, expenses, and interest under 11 U.S.C. § 548(a)(1) and (a)(2) and 11 U.S.C. § 550(a)(1). *Id.* at 36. In applying the first part of the test as to whether the trustee's claims were legal or equitable, the Supreme Court concluded "that the respondent would have had to bring his action to recover an alleged fraudulent conveyance of a determinate sum of money at law in 18th-century England, and that a court of equity would not have adjudicated it." *Id.* at 45. As to the second part, it held that the nature of the relief sought (i.e. return of "money payments of ascertained and definite amounts") was legal rather than equitable. *Id.* at 42. Since the trustee was seeking only return of the money, this was the equivalent to an action for damages, the classic legal remedy.

At the core of the Trustee's Amended Complaint in the instant case is a request that this Court disregard quitclaim deeds that were neither notarized or recorded along with a request that

the Court cancel other deeds that were recorded at later dates and set aside the transfers attendant thereto. The foregoing requests are accompanied by a request for "such other and further relief as this Court deems just and appropriate." The foregoing requests are, like the relief sought in *Johnson*, clearly equitable in nature. Indeed, the Eleventh Circuit Court of Appeals stated in *Pettigrew v. Graham (In re Graham)*, 747 F.2d 1383, 1388 (11th Cir 1984), that such a type of prayer for relief "was a direct appeal to the court's equity power to fashion any remedy necessary to satisfy the ends of justice."

The remaining prayer for relief in Wells Fargo's Consolidated and Amended Cross-Claim Against James L. Horob, Bea M. Horob and Larry Horob filed August 1, 2007, is similarly equitable in nature in that Wells Fargo asks that this Court determine "that the conveyances from the Defendants Larry G. Horob and James L. Horob be set aside and annulled and the judgment be declared a lien on said property . . . [and] [f]or such other and further relief as this Court deems just and equitable."

For the reasons discussed above, this Court concludes that neither James L. And Bea M. Horob nor Larry Horob have a Seventh Amendment right to a jury trial. The Court would add as a final note that while James L. Horob, Bea M. Horob or Larry Horob have not filed a proof of claim in either the case of Horob Livestock or Todd Horob, James L. Horob is deemed to have ratified and acquiesced to the bankruptcy filing on behalf of Horob Livestock. James Horob has thus implicitly submitted himself to the equitable jurisdiction of this Court.

Consistent with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Trustee's and Wells Fargo's Notices of Withdrawal of Consent to Jury Trial and Requests for Judge Trial are approved; the Defendants James L. Horob, Bea M.

Horob and Larry Horob no longer have the right to a Seventh Amendment jury trial in this Adversary Proceeding; and this matter shall be tried before the undersigned, sitting as the trier of fact.

        BY THE COURT

        /s/ Ralph B. Kirscher
        HON. RALPH B. KIRSCHER
        U.S. Bankruptcy Judge
        United States Bankruptcy Court
        District of Montana